UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
CEDRIC MOSELY and J. RAFAEL
COSIO, on behalf of themselves and all
others similarly situated,

        Plaintiffs,                          **MEMORANDUM & ORDER**

        - against -                          13 CV 2470 (RJD) (RLM)

VITALIZE LABS, LLC,

        Defendant.
------------------------------------------------------- x
J. RAFAEL COSIO, on behalf of himself
and all others similarly situated,

        Plaintiff,

        - against -                          14 CV 4474 (RJD) (RLM)

VITAQUEST INTERNATIONAL, LLC, and
GARDEN STATE NUTRITIONALS INC.,

        Defendants.
------------------------------------------------------- x
VITAQUEST INTERNATIONAL, LLC, and
GARDEN STATE NUTRITIONALS INC.,

        Defendants/Third-Party
        Plaintiffs,

        - against -

VITALIZE LABS, LLC,

        Third-Party Defendant.
------------------------------------------------------- x

DEARIE, District Judge

        These consumer class actions seek damages arising out of the purchase of the vitamin

supplement "E-BOOST." E-BOOST is the brand name of a variety of energy products marketed

and sold by Vitalize Labs, LLC ("Vitalize"). E-BOOST products are manufactured for Vitalize by Garden State Nutritionals, LLC ("Garden State"), a division of VitaQuest International, LLC ("VitaQuest"). The named plaintiff, J. Rafael Cosio, alleges that E-BOOST fraudulently and deceptively marketed itself as delivering a "boost" to consumers' immune systems. Defendants in both cases have moved for summary judgment, arguing that Cosio lacks Article III standing. For the reasons discussed below, the Court grants in part defendants' consolidated motions.

BACKGROUND

Vitalize markets and sells various energy products under the trade name "E-BOOST," such as powder packets, dissolvable tablets, and liquid shots, all in a variety of flavors. Statement of Material Facts in Support of Vitalize Labs, LLC's Motion for Summary Judgment, ECF No. 54-2 at ¶¶ 1-2. Vitalize pitches its E-BOOST products as a "healthy" alternative to sugary energy drinks because they contain caffeine derived from green tea, as well as various vitamins, minerals, and natural fruit, seed, vegetable, and root extracts. Id. at ¶ 3. However, Cosio alleges that Vitalize also used to market E-BOOST as delivering a "boost" to consumers' immune systems. Plaintiff J. Rafael Cosio's Consolidated Responses to Statements of Material Facts by Defendants, ECF No. 55-1 at ¶¶ 1, 3.

Cosio and Cedric Mosely brought a class action suit against Vitalize in 2013 (the "Vitalize Suit"), claiming various violations under the consumer protection laws of their respective home states, California and New York. Vitalize Complaint, ECF No. 1. They sought to represent a nationwide class, consisting of all consumers who purchased E-BOOST products for personal use during the relevant period, as well as state classes for California and New York. Id. at ¶¶ 29-30. Mosely later withdrew from the case, leaving Cosio as the sole remaining named plaintiff. Stipulation of Voluntary Dismissal of Pl. Cedric Mosely, ECF No. 18.

The complaint in the Vitalize Suit states that Cosio "purchased E-BOOST's All-Natural Orange Flavor and Natural Pink Lemonade Flavor powder packets" in 2011 "from his local CVS [s]tore in West Hollywood," California, "based on the representation that the products would boost his immunity." Vitalize Complaint at ¶ 7.

Difficulty arose, however, during Cosio's July 2014, deposition, when Cosio repeatedly testified that he had purchased E-BOOST powder packets at his local CVS store, as well as at Target. Declaration of Anthony A. Lopresti in Support of Def.'s Motion for Summary Judgment, ECF No. 54-4 [hereinafter Lopresti Decl.] at Ex. 1, 23:9-10, 49:11-13, 51:6-10, 95:23-25, 96:1-7. At the end of the deposition, Vitalize's attorneys revealed that neither CVS nor Target carried E-BOOST products, a claim that has been substantiated by declarations from employees at both stores. Id. at 99:19-20, 100:2-3; see also Declaration of Thomas Burke, ECF No. 54-5 at ¶ 5 (CVS); Declaration of Lily Beilin, ECF No. 54-6 at ¶ 5 (Target). Confronted with this assertion, Cosio responded, "I don't know. I said in the beginning that [CVS] was *probably* one of the places I bought [E-BOOST]." Lopresti Decl., Ex. 1 at 99:25, 100:1 (emphasis added).

Notably, at the beginning of his deposition, Cosio stated that he used to buy vitamins at CVS, Target, *and* Capitol Drugs. Id. at 16:23-25. And throughout the deposition, Cosio frequently noted that his memory was not precise and that CVS and Target were merely some of the places where he had purchased E-BOOST products. See, e.g., id. at 49:11-13, 51:6-10, 87:2-6, 96:1-7, 99:19-25, 100:1-5. Defendants concede that the Capitol Drugs in West Hollywood *did* carry orange flavor E-BOOST powder packets in 2011 but deny that Capitol Drugs carried the pink lemonade flavor. Amended Declaration of Imelda Malijan-Sjam, ECF No. 56-1 at ¶¶ 2-3.

Plaintiff moved for an extension of time to amend the Vitalize complaint. ECF No. 24. The motion requested permission merely to add defendants Garden State and VitaQuest to the

Vitalize Suit, but the proposed amended complaint also changed the location of Cosio's alleged purchases from "CVS" to "retail stores in West Hollywood." Id. at 1 and Ex. 1, ¶ 6. Vitalize opposed the amendment, accusing plaintiff of seeking to surreptitiously change his story after being caught in a lie. ECF No. 26. Magistrate Judge Roanne L. Mann denied plaintiff's motion without prejudice, stating that plaintiff had not shown good cause for extending the deadline and Vitalize would be prejudiced by having discovery reopened. ECF No. 31. Plaintiff did not appeal. Shortly thereafter, Vitalize indicated its intent to move for summary judgment for lack of Article III standing. ECF No. 33.

Unable to add defendants or change the location of his alleged purchases, plaintiff quickly initiated a separate lawsuit against Garden State and VitaQuest (the "VitaQuest Suit") under the consumer protection laws of Cosio's home state, California, as well as New Jersey and New York. VitaQuest Complaint, ECF No. 1. Notably, this new complaint provided that Cosio purchased the E-BOOST powder packets from "retail stores in the Los Angeles area." Id. at ¶ 6.

Shortly after filing the VitaQuest complaint, plaintiff moved to consolidate the Vitalize Suit and the VitaQuest Suit, ECF No. 7, which this Court denied without prejudice, Electronic Order, No. 14-CV-4474 (E.D.N.Y. entered Oct. 10, 2014). Garden State and VitaQuest subsequently moved to join in Vitalize's summary judgment motion, ECF No. 25, a request that—given the common bases for the motions—the Court granted, Electronic Order, No. 14-CV-4474 (E.D.N.Y. entered Dec. 23, 2014).

The consolidated summary judgment motion seeks to dismiss all or some of the plaintiff's claims in both cases for lack of Article III standing on one of three grounds. First, defendants seek to dismiss the action in its entirety, based on the argument that Cosio has failed to establish a cognizable "injury in fact," because Cosio cannot prove that he actually purchased

*any* E-BOOST products. Second, defendants assert that Cosio does not have standing to bring claims for *certain* E-BOOST products that Cosio admits he never purchased (such as the E-BOOST dissolvable tablets and liquid shots). Third, the defendants in the VitaQuest Suit seek to dismiss plaintiff's claims under the consumer protection laws of New Jersey and New York, because Cosio allegedly purchased E-BOOST products only in his home state of California.

## DISCUSSION

Summary judgment is appropriate where "'the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law.'" Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quoting Global Network Commc'ns, Inc. v. City of New York, 562 F.3d 145, 150 (2d Cir. 2009)); see also Fed. R. Civ. P. 56(a). In deciding whether summary judgment is warranted, the Court must "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney, 766 F.3d at 167 (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 79-80 (2d Cir. 2009)) (internal quotation marks omitted).

A. Article III Standing

Under the case-or-controversy requirement of Article III, § 2, of the Constitution, plaintiffs must establish that they have standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "To have such Article III standing, 'the plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant [his] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [his] behalf.'" Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l., 790 F.3d 411, 417 (2d Cir. 2015) (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975)) (alterations omitted). "A plaintiff claiming such a stake must establish" that (1) "[he] has sustained an 'injury in fact' which is both 'concrete and

particularized' and 'actual or imminent,'" (2) "the injury was in some sense caused by the opponent's action or omission," and (3) "a favorable resolution of the case is 'likely' to redress the injury." Id. (citing Lujan, 504 U.S. at 560-61). And "'each element . . . must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" Lewis v. Casey, 518 U.S. 343, 358 (1996) (quoting Lujan, 504 U.S. at 561).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . . ." Id. at 357 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976)) (internal quotation marks omitted). Accordingly, "[f]or each claim asserted in a class action, there must be at least one class representative . . . with standing to assert that claim." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 862 F.Supp.2d 322, 331 (S.D.N.Y. 2012) (citing Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007)). "At the same time, it is important to recognize that the entire concept of class actions is in some degree of tension with the requirement of standing." Id. at 332. Therefore, courts do not require that a "named plaintiff . . . literally suffer the same actual injury that each class member suffered." Id. "Rather, the named plaintiff must 'show that he is within the class of persons who [were] concretely affected' by 'injurious conduct' by the defendant such that that plaintiff has the 'necessary stake in litigating' the case." Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 999 (1982)).

1. *A Reasonable Juror Could Find that Cosio Purchased E-BOOST*

Defendants argue that Cosio has failed to establish the cognizable "injury in fact" required for Article III standing because he cannot show that he ever purchased *any* E-BOOST products. This argument has three parts. First, defendants argue that Cosio's testimony regarding

6

his E-BOOST purchases is not credible. Second, defendants argue that Cosio lacks physical proof of his purchases. Third, defendants argue that Cosio is bound by his prior assertions that he purchased E-BOOST at stores that defendants claim do not in fact sell the product.

        a. Credibility

Despite defendants' legitimate position on Cosio's credibility, this is not an issue the Court may address. The Second Circuit has held that "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff . . . without making some assessment of the plaintiff's account." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 105 (2d Cir. 2011) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005)) (internal quotation marks omitted). However, such credibility assessments should be reserved for "*extraordinary* cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility . . . ." Id. at 106 (quoting Jeffreys, 426 F.3d at 555) (internal quotation marks omitted) (emphasis added); see, e.g., Jeffreys, 426 F.3d at 551-52, 555 (affirming district court's grant of summary judgment to the city of New York in police brutality case where plaintiff testified on multiple occasions that he had jumped out of a window before changing his story to accuse the police of throwing him through the window).

Indeed, the Second Circuit has cautioned district courts against "routinely engag[ing] in searching, skeptical analyses of parties' testimony in opposition to summary judgment." Rojas, 660 F.3d at 106. "[I]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was *ambiguous, confusing, or simply incomplete*." Jeffreys, 426 F.3d at 555 n.2 (internal quotation marks and citation omitted) (emphasis in original); see also Matheson v.

7

Kitchen, 515 Fed. App'x. 21, 24 (2d Cir. 2013) (holding that it was error to disregard testimony when, although there were "variations in the details of [the] account, the substance of [the] testimony [could ]not fairly be characterized as fundamentally inconsistent or incoherent"); Jin Dong Wang v. LW Rest., Inc., -- F. Supp. 3d --, 2015 WL 363871, at *15 (E.D.N.Y. 2015) (declining to grant summary judgment to defendants who "highlighted several potentially inconsistent statements" of the plaintiff, where many of the statements were "not directly contradictory . . . [,] may be explained when read in context with the record as a whole, or may have another plausible explanation, such as the witness' lapse in memory").

Defendants argue that the statements Cosio made in his pleadings and deposition regarding the locations of his alleged E-BOOST purchases have been "definitively and unequivocally" proven false and Cosio's credibility thereby destroyed. Defendants' characterization of Cosio's statements, however, is hyperbolic. Given the three-year time span between the alleged purchases and Cosio's deposition—as well as Cosio's repeated assertions that he did not remember the details of the purchases and his initial statement that he sometimes purchased vitamins at Capitol Drugs—a reasonable juror could find that Cosio had merely incorrectly recalled the location of his purchases.

The Court also rejects defendants' argument that Cosio's deposition testimony prevents a finder of fact from concluding that Cosio purchased E-BOOST at *any* store. That defense counsel carefully guided Cosio into a statement that he purchased E-BOOST at two stores that may in fact not sell the product will no doubt be of interest to a jury. However, neither this well-directed testimony, nor Cosio's use of the word "vitamins" when describing his purchases at Capitol Drugs, justifies a ruling that there is no basis for a finder of fact to conclude that Cosio purchased E-BOOST at *any* store, Capitol Drugs or otherwise.

8

b. Proof of Purchase

Next, defendants maintain that they are entitled to summary judgment because Cosio's alleged purchases are undocumented by any physical proof of purchase, such as receipts or credit card statements.[1]

While the analysis required for a summary judgment motion is different than that required for class certification, the Court is guided by the reasoning in In re Scotts EZ Seed Litigation that "[i]f proof of purchase was required . . . there would be no such thing as a consumer class action, especially with respect to low-cost products." 304 F.R.D. 397, 407-08 (S.D.N.Y. 2015) (determining that class was ascertainable despite the fact that consumers were unlikely to have retained proof of purchase) (internal quotation marks and citation omitted).[2] This policy concern is equally present at the summary judgment stage.

The Court therefore finds that, despite the obvious flaws in plaintiff's position, a reasonable juror could conclude that Cosio purchased E-BOOST in 2011, despite his lack of physical proof of purchase. See, e.g., Weiner v. Snapple Bev. Corp., No. 07-CV-8742 (DLC), 2011 WL 196930, at *3-5 (S.D.N.Y. Jan. 21, 2011) (granting summary judgment to Snapple not

---

[1] Cosio's counsel claims to have some of their client's unused E-BOOST powder packets. However, the Court declines to base its decision on the existence of these purported leftovers.

[2] "District judges in this [Circuit] have expressed conflicting views on whether putative classes are ascertainable when consumers are unlikely to retain receipts or other records of purchase." Id. at 407; compare Weiner v. Snapple Bev. Corp., No. 07-CV-8742 (DLC), 2010 WL 3119452, at *13 and n.22 (S.D.N.Y. Aug. 5, 2010) (denying motion for class certification where not even the "named plaintiffs ha[d] receipts or any other records for their Snapple purchases") with Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (noting, in determining that class of consumers who had purchased pomace oil marketed as "100% Pure Olive Oil" was ascertainable, that "Snapple [went] further than," the court was "prepared to go, and, indeed, would render class actions against producers almost impossible to bring"); but see Ault v. J.M. Smucker Co., -- F. Supp. 3d --, 2015 WL 4692454, at *5 (S.D.N.Y. 2015) (reconciling these cases by noting that in Ebin "every bottle of olive oil sold . . . contained the allegedly misleading label," whereas in Snapple, "potential class members were required to remember the specific . . . juice they had supposedly purchased" because only certain products were labeled "All Natural").

because the named plaintiffs lacked physical receipts for their purchases, *per se*, but because the plaintiffs' testimony was insufficient to establish how much of a premium they had paid for beverages with the misleading "All Natural" label); In re HP Inkjet Printer Litigation, No. 05-CV-3580 (JF), 2008 WL 2949265, at *3 (N.D. Cal. July 25, 2008) (concluding that "a reasonable jury could find that [plaintiff] ha[d] suffered a cognizable injury," of purchasing replacement ink cartridges for his printer after receiving premature low-ink warnings, despite the fact that plaintiff "ha[d] no proof of purchase evidencing that he ever owned" the subject printer nor any "receipts for the purchase of any of the replacement ink cartridges").

c. Judicial Admissions

Finally, defendants argue that the statements in the Vitalize complaint[3] and Cosio's deposition testimony regarding his alleged purchases at CVS and Target constitute a judicial admission to which he must be held.

"Judicial admissions are 'formal concessions [that are] binding upon the party making them.'" Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 464 (S.D.N.Y. 2000) (citation omitted). For example, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985); see also Morgan v. Nassau Cty., No. 03-CV-5109 (SLT) (WDW), 2009 WL 2882823, at *17 (E.D.N.Y. Sept. 2 2009) ("While a plaintiff may plead inconsistent claims . . . he cannot escape summary judgment on those claims simply by picking and choosing his historical facts at will.").

However, "[t]rial judges are given broad discretion to relieve the parties from the consequences of judicial admissions in the appropriate circumstances." In re Methyl Tertiary

---

[3] The issue is not presented by the VitaQuest complaint.

Butyl Ether Products Liability Lit., 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005). "Appropriate circumstances include where accepting the admission would be 'manifestly unjust or if the evidence contrary to the stipulation is substantial.'" TR 39th St. Land Corp. v. Salsa Distr. USA, LLC, No. 11-CV-7193 (DF), 2015 WL 1499173, at *5 (S.D.N.Y. Mar. 25, 2015) (quoting Hoodho v. Holder, 558 F.3d 184, 191 (2d Cir. 2009)); see also W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121-22 (2d Cir. 1990) (finding admission in pleading to be conclusive against the party who made it, in the context of a summary judgment motion, but noting that the party who had made the admission had not claimed fraud or mistake); Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund, 29 F. Supp.3d 373, 380 (S.D.N.Y. 2014) ("A District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief . . . may, in its discretion, relieve the party of its otherwise binding consequence.") (internal quotation marks and citation omitted); Dortz v. City of New York, 904 F. Supp. 127, 146 n.6 (S.D.N.Y. 1995) (declining to rely on defendants' admission in their answer to resolve summary judgment motion "[s]ince [d]efendants assert[ed] that their admission was inadvertent and that they intend[ed] to seek leave to amend").

The relevant language in the Vitalize complaint and Cosio's deposition testimony is not the kind of "formal concession" typically associated with judicial admissions.[4] Maurizio, 84 F. Supp. 2d at 464. However, even if this language constitutes a judicial admission, the Court finds that this case presents the appropriate circumstances for relief. The exact location of Cosio's E-BOOST purchase was not necessary at the pleading stage,[5] Cosio's deposition made clear that

---

[4] This is not a case, for example, where the defendants seek to hold plaintiff to a prior concession that the defendants claim is true but plaintiff now denies. Rather, defendants ask the Court to bind plaintiff to an earlier statement that they, themselves, wholeheartedly repudiate.

[5] See Ebin v. Kangadis Food Inc., No. 13-CV-2311 (JSR), 2013 WL 6504547, at *5-6 (S.D.N.Y. Dec. 11, 2013) (finding claims under New York and New Jersey consumer protection

11

he lacked a precise memory of his particular purchases, and plaintiff promptly sought to amend the relevant language in the Vitalize complaint after being alerted of his misstatement.[6] Holding plaintiff to a strict reading of this overly precise pleading, despite his claims of honest error, is unjustifiably severe. Therefore, to the extent the language in the Vitalize complaint and Cosio's deposition testimony regarding purchases at CVS and Target constitutes a judicial admission, the Court exercises its discretion to relieve plaintiff of the binding consequences of such statements. Those statements, of course, may still be used at trial for impeachment purposes.

### 2. *The E-BOOST Products are Sufficiently Similar to Establish Standing at this Stage of the Case*

As an alternative to their above arguments that Cosio lacks standing because he cannot establish that he ever purchased *any* E-BOOST products, defendants assert that Cosio does not have standing to bring claims for *certain* E-BOOST products that Cosio admits he never purchased (such as the E-BOOST liquid shots and dissolvable tablets).

Plaintiff correctly responds, however, that under NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co., such an argument is premature and should be addressed at the class certification stage. 693 F.3d 145, 158 n. 9 (2d Cir. 2012) (noting that the district court "erred to the extent it based its conclusion on the (mistaken) assumption that" the named plaintiff need have purchased all of the financial securities purchased by the class he sought to represent and that "[i]n any event, [plaintiff]'s standing to assert claims on others' behalf is an inquiry separate

---

laws were sufficiently plead where complaint stated plaintiff had purchased the product at a "local grocery store"); but see Soo Line R.R. Co. v. St. Louis Sw. Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.") (internal quotation marks and citation omitted); see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (citing Soo Line approvingly).

[6] Granted, plaintiff's counsel should have drawn attention to this correction in their motion for an extension of time to amend the complaint. However, given the substantial briefing and debate that followed, defendants can hardly claim continuing prejudice from this oversight.

from its ability to represent the interests of absent class members"); see also In re Frito-Lay North Am., Inc., All Nat. Litigation, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013) (holding "because the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase," and noting that "[w]hether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products . . . is a question the Court will consider on a Rule 23 certification motion").

Indeed, courts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are "sufficiently similar" to the products that the named plaintiff *did* purchase. See, e.g., Brady v. Basic Research, L.L.C., No. 13-CV-7169 (SJF), 2015 WL 1542094, at *5 (E.D.N.Y. Mar. 31, 2015) (citing cases). Defendants' citations to non-binding precedent to the contrary are inapposite, not controlling, and have been expressly rejected by courts in this Circuit. See, e.g., Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) (noting some courts have "rhetorically ask[ed] 'how could [the plaintiff] possibly have been injured by representations made on a product he did not buy,'" but finding the "better" approach to be that plaintiffs may proceed to the class certification stage for products that they did not purchase so long as there are substantial similarities).

Defendants rely on the summary order in DiMuro v. Clinique Labs., LLC, in which the Second Circuit held that the named plaintiffs could not bring claims relating to beauty products they did not purchase. 572 F. App'x 27, 29 (2d Cir. 2014). "That case, however, decided the question of *class* standing, not Article III standing," and applied to thirty-five different

13

advertising claims for seven beauty products, only three of which had been purchased by the named plaintiffs. Weisblum v. Prophase Labs, Inc., -- F. Supp. 3d. --, 2015 WL 738112, at *6 (S.D.N.Y. 2015) (citing Dimuro, 572 F. App'x at 29) (emphasis in original). "Further, far from changing the law of the Circuit (which it could not do through a summary order. . .), the panel expressly reiterate[d] the holding of NECA–IBEW." Id. (internal quotation marks and citations omitted). Finally, even if plaintiff is required to allege "nearly identical" misrepresentations, he has done so, providing label images in his complaints in both cases that show the consistency of E-BOOST's immunity boosting claims across their products. Therefore, the Court finds that the E-BOOST powder packets, which Cosio claims to have purchased, are sufficiently similar to the E-BOOST dissolvable tablets and liquid shots, which Cosio admits he never purchased, to establish standing at this stage of the case.

### 3. *Claims Under New Jersey and New York Consumer Protection Laws*

Lastly, the defendants in the VitaQuest Suit seek to dismiss plaintiff's claims under the consumer protection laws of New Jersey and New York, because Cosio allegedly purchased E-BOOST products only in his home state of California.

It is appropriate for the Court to address Cosio's standing deficiency at this stage of the case, as opposed to at class certification. See, e.g., Temple v. Circuit City Stores, Inc., Nos. 06-CV-5303 (JG), 06-CV-5304 (JG), 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (rejecting plaintiffs' argument that their "standing to advance non-Tennessee state law claims on behalf of" the class was "more properly addressed during the class certification proceedings" because "[t]he Supreme Court has made clear that because Article III standing goes to a federal court's jurisdiction, the court should consider standing as a threshold issue") (citing City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) and Warth, 422 U.S. at 498).

Furthermore, defendants' position on this issue enjoys overwhelming support in the courts of this Circuit and others. See, e.g., Mendy v. JP Morgan Chase & Co., No. 12-CV-8252 (PGG), 2014 WL 1224549, at *8 (S.D.N.Y. Mar. 24, 2014) (holding that New Jersey's consumer protection law, and not New York's, would apply because plaintiff resided in New Jersey) (collecting cases); Temple, 2007 WL 2790154, at *8 (dismissing, for lack of standing, claims arising under the laws of states other than Tennessee where "plaintiffs allege[d] no injury within any state other than Tennessee"); Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 332 (D. NJ 2014) ("A Plaintiff may bring state law [consumer protection] claims only under the law of the state where he or she lived and the alleged injury occurred."). Plaintiff's citations to the contrary are inapposite. See, e.g., Ebin, 297 F.R.D. at 564, 570 (finding that common issues predominated in New Jersey and New York consumer protection claims but noting that the case involved named plaintiffs who were from and made their purchases in *each* of those states).

Finally, plaintiff's attempt to invoke the laws of New Jersey and New York, based on the fact that defendants make sales in those states or are headquartered there, lacks merit. See, e.g., Thomas v. JPMorgan Chase & Co., 811 F. Supp. 2d 781, 800 (S.D.N.Y. 2011) (noting that the relevant New York statute "'was not intended to police the out-of-state transactions of New York companies'" and "[t]o expand this protection to consumers in other states would subject New York businesses to almost unlimited liability") (quoting Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 325, 774 N.E.2d 1190, 1196 (2002)); Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (rejecting argument that New Jersey consumer protection law applied to the overcharging of plaintiffs by a tax preparation franchise in New York, despite the fact that the defendant companies had headquarters and franchises in New

Jersey, because this was "not enough to outweigh New York's much more direct interest in applying its consumer protection law in this case"); Dzielak, 26 F. Supp. 3d at 333.

Therefore, plaintiff's claims under the consumer protection laws of New Jersey and New York, in both suits, must be dismissed for lack of standing, because Cosio allegedly purchased E-BOOST products only in his home state of California.[7]

## CONCLUSION

For the reasons discussed above, the Court denies defendants' consolidated summary judgment motion to dismiss the plaintiff's claims for lack of Article III standing for failure to establish a cognizable "injury in fact." A reasonable juror could find that Cosio purchased E-BOOST powder packets in 2011, and the E-BOOST powder packets are sufficiently similar to the E-BOOST dissolvable tablets and liquid shots to establish Cosio's standing at this stage of the case for those admittedly unpurchased products. However, the Court dismisses plaintiff's claims under the consumer protection laws of New Jersey and New York in both cases, because Cosio allegedly purchased E-BOOST products only in his home state of California.

SO ORDERED.

Dated: Brooklyn, New York
August 24, 2015

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge

---

[7] Vitalize did not make this argument in its original motion. However, because the summary judgment motions in the two cases were joined and plaintiff had the opportunity to brief this issue, the Court grants dismissal of the relevant claims in both cases.